TROTTER *v.* KEMP.

5-2229                                    340 S. W. 2d 274

Opinion delivered November 7, 1960.

[Rehearing denied December 5, 1960.]

*Chas. B. Thweatt,* for appellant.

*John L. Sullivan,* for appellee.

ED. F. McFADDIN, Associate Justice. This is a claim against an estate for personal services rendered the deceased. The claimant is the appellant, M. J. Trotter; and the appellee, Mrs. Helen K. Kemp, is the executrix of the estate of Mrs. Josephine Page, who departed this life testate on May 17, 1958 at an age in excess of 90 years. Appellant Trotter presented his claim against the estate for $11,850.00. The Probate Court allowed the claim in the amount of $120; and Trotter has appealed.

Entirely disregarding Trotter's testimony, the facts clearly establish that he lived in the home of Mrs. Page and cared for her for the last three years of her life; that he was not related to her in any way; and that the decedent recognized her obligation to the appellant and contemplated compensating him in addition to what he had been paid. He is entitled to some compensation. See *Harris* v. *Whitworth, Admr.,* 213 Ark. 480, 211 S. W. 2d 101.

Except for Mr. Wills' testimony (subsequently mentioned in this paragraph), there is no testimony as to

any contractual amount for Trotter's services, but he could recover on a *quantum meruit* basis. See *Nissen* v. *Flournoy*, 160 Ark. 311, 254 S. W. 540; and *Suits* v. *Chumley*, 218 Ark. 488, 236 S. W. 2d 1001. Trotter failed to show the *quantum meruit* value of his services. Mr. Wills testified, when called by the executrix, that Trotter told Wills about six months before Mrs. Page's death that he (Trotter) ''. . . was staying there every night he was in town and that Mrs. Josie Page was paying him $2.00 a night and his evening and morning meal.'' Since this is the only value stated, Trotter is limited to the figure of $2.00 per night.

Even though Trotter had cared for Mrs. Page for many years it must, of course, be conceded that Trotter could make no claim for services in excess of three years prior to Mrs. Page's death, since there was no written contract. § 37-206, Ark. Stats. So the maximum amount that the evidence would support is a total of 1095 nights (3 years) at $2.00 a night, which would be $2190. But Mrs. Page was in the hospital for seven nights immediately preceding her death, and that would leave only 1088 nights, or a total of $2176 as the maximum amount that could be allowed Trotter in this case. The executrix introduced checks issued to Trotter by Mrs. Page dated within three years of her death and totalling $809. These checks would constitute evidence of payment to that amount in the absence of any proof to the contrary, and there was none. Deducting the $789 from the $2176 would leave $1367 as the maximum amount that Trotter can recover under the evidence in this case.

The Probate Court allowed Trotter only $120. This was on the basis that, calculating from some date in October 1957, and assuming that Trotter was paid in full up to that time, there would only be a balance of 60 nights for which he was not paid. But we try these probate cases *de novo* on the record (see *Suits* v. *Chumley*, 218 Ark. 488, 236 S. W. 2d 1001); and we find nothing in the record to substantiate the assumption that Trotter was paid in full to any date in October 1957, or to any other date. Of course, Trotter insists

that his services were worth far more than $2.00 a night; but the answer is, he did not prove his services. The executrix contends that Trotter has been paid; but the answer is that payment was not established. The claim of Trotter should have been allowed for $1387, according to the calculation heretofore made.

The judgment is reversed and the cause is remanded, with directions to enter a judgment as herein stated.

GEORGE ROSE SMITH, WARD and ROBINSON, JJ., dissent.

PAUL WARD, Associate Justice, dissenting.

I am dissenting to the majority opinion because I believe the evidence justifies the conclusion that appellant had been paid for his services except, of course, for the amount allowed by the trial court. My reasons are hereafter set forth.

Mrs. Page died May 17, 1958, at the age of 90. The majority would pay appellant at the rate of $2.00 per day for a period of three years preceding Mrs. Page's death, with the exceptions noted in the opinion.

It is undisputed that from August, 1957, Mrs. Page signed and delivered to appellant 62 separate checks for a total of $509—the last check being dated March 11, 1958. It was undisputed that these checks were written out by appellant for Mrs. Page to sign.

It is hard to understand how anyone can reasonably believe that either Mrs. Page or appellant knew or even thought that Mrs. Page was, during that time, indebted to appellant for past services in the amount of approximately $1500. If appellant did feel that Mrs. Page owed him such a large amount it seems only reasonable that he should have done or said something about it, and I think it was his duty to have done so. I doubt if he would have been so bold as to have demanded $1500 from Mrs. Page while she was still alive. Now that she is dead he demanded, in this litigation, a sum in excess of $10,000. These were circumstances which the Chancellor had a right to consider in arriving at his decision.

The Chancellor had all of the evidence as it was presented to him in open court and, in view of the facts and circumstances above set forth, I am most unwilling to disturb the Chancellor's findings.

GEORGE ROSE SMITH and ROBINSON, JJ., join in this dissent.